**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
_____
                               )
CORNELL D.M. JUDGE CORNISH,     )
                               )
         Plaintiff,            )
                               )
         v.                    )     Civil Action No. 09-797 (RWR)
                               )
UNITED STATES OF AMERICA,       )
et al.,                        )
                               )
         Defendants.           )
_____)
```

## MEMORANDUM OPINION

Pro se plaintiff Cornell Cornish brings claims against the United States of America, the U.S. Patent and Trademark Office ("USPTO"), and then-USPTO employees Jon Doll, Harry I. Moatz, and James Toupin, each of whom is sued in his official and individual capacities, arising from the USPTO's decisions to deny Cornish's request for reinstatement to the patent attorney register. The defendants move to dismiss or, in the alternative, for summary judgment, arguing among other things that Cornish's claims fail for lack of proper service and personal jurisdiction, and for failure to state a claim. Because Cornish failed to effect proper service upon the individually-named defendants, his claim regarding USPTO rules is moot, sovereign immunity bars his common law claims and constitutional claims against the government and the employees in their official capacities, and *res judicata* bars his reinstatement claim, the defendants' motion will be granted.

BACKGROUND

Earlier memorandum opinions described the facts relevant here.  See Cornish v. Dudas, 813 F. Supp. 2d 147 (D.D.C. 2011) ("Cornish II"); Cornish v. Dudas, 715 F. Supp. 2d 56 (D.D.C. 2010) ("Cornish I").  Cornish passed the patent examination in 1958 and was registered to practice before the USPTO.  Cornish I, 715 F. Supp. 2d at 59.  However, a former client filed a grievance against him in 1995.  In 1996, Cornish informed the USPTO that he would "ceas[e] practice," id., and the USPTO construed the letter as a request for removal from the register.  Cornish II, 813 F. Supp. 2d at 148.  After the USPTO invited Cornish to correct its interpretation and received no response, it removed Cornish from the register.  Id.

Cornish requested reinstatement in 2005.  Id.  However, the USPTO denied the request based on Cornish's failure to present sufficient evidence "of his ability to render patent applicants valuable service" or, in the alternative, to pass the patent examination.  Cornish I, 715 F. Supp. 2d at 59.  Cornish took and failed the patent examinations administered in July of 2005, 2006, and 2007, though the USPTO's Office of Enrollment Discipline ("OED") had granted all of his requests to make reasonable accommodations for him to take the exams.  Id.  He also sat for and failed the 2008 patent exam, during which he received "the reasonable medical accommodations for which he had

provided sufficient medical documentation establishing a need."[1] (Defs.' Mem. of P. & A. in Supp. of its Mot. to Dismiss [Dkt. #11] ("Def.'s First Mem.") at 8.)

In 2007, Cornish brought an action against three USPTO employees in their official capacities, challenging the defendants' decision to deny his reinstatement request in 2005 and alleging various constitutional and statutory violations. See Cornish I, 715 F. Supp. 2d at 60. He later amended his complaint to add Bivens[2] claims and challenge the USPTO's "Final Rules . . . that governed patent applicants' process for protecting inventions." Id. Summary judgment was granted in favor of the defendants as to Cornish's reinstatement claims "[b]ecause Cornish . . . failed to show that the decision to deny his reinstatement request was arbitrary or capricious and failed to demonstrate that the defendants violated the Rehabilitation Act," id. at 58, which requires that disabled individuals receive

---

[1] Cornish was provided 14-point font on the examination and answer sheets, magnifiers for reading the Manual of Patent Examining Procedure, additional lighting, a separate testing room, and additional time to take the exam spread out over two days instead of the standard one day. (Defs.' First Mem. at 8-9.) Among other requested accommodations, Cornish was not provided a human reader, a closed circuit television, or access to his corrected 2005, 2006, and 2007 examinations, nor was he permitted to retake the three past patent bar examinations an unlimited number of times. (Id. at 8.)

[2] Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), recognized a cause of action against individual federal employees for constitutional violations committed while carrying out their official duties.

"'reasonable accommodations' that permit them to have access to and take a meaningful part in public services and public accommodations." Id. at 65. His remaining claims were dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Id. at 58.

In 2008, before he received his 2008 exam results, Cornish filed a petition and addendum with the OED Director. (Def.'s First Mem. at 9; see also Exs. 18, 19.) The petition and addendum requested that the OED reconsider the reasonable accommodations provided to him during the July 2008 patent examination, and requested reinstatement to the patent register by either waiver of the requirement that he pass the examination or permission to retake the identical examination an unlimited number of times. (Id. at 9.) Cornish also "generally re-asserted the same causes of actions presented in Cornish I" in his petition.[3] (Id.) The OED director denied Cornish's petition on November 6, 2008. (Id. at 10.) The Acting USPTO Director's designate affirmed the decision on March 31, 2009 and later denied Cornish's request for reconsideration. (Id. at 11.)

In this action seeking declaratory and injunctive relief and damages, Cornish challenges as an unconstitutional taking the

---

[3] While his petition to the OED Director was pending, Cornish filed an additional petition with the acting USPTO Director, repeating the same challenges to the OED decisions. (Defs.' First Mem. at 9-10.)

USPTO's denial of his request for reinstatement. (See, e.g., Am. Compl. at 63, 80, 93, 96-97, 101, 106.) He also challenges the USPTO's application of the "Final Rules" to him as unconstitutional under the *Ex Post Facto* and Bill of Attainder Clauses (Am. Compl. at 63-65, 75), asserts a <u>Bivens</u> claim against USPTO employees in their individual and official capacities based upon purported First Amendment and due process violations (id. at 63, 67), and seeks to re-take the patent exam an unlimited number of times (id. at 71). Finally, Cornish brings common law claims for tortious "interference with attorney-client relationships[,]" fraud, and deceit. (See, e.g., id. at 73, 90; see also Defs.' Mem. of P. & A. in Supp. of Defs.' Mot. to Dismiss Am. Compl. or, in the Alternative, for Summ. J. [Dkt. #23] ("Defs.' Second Mem.") at 10.) The defendants now move to dismiss the Amended Complaint under Federal Rules of Civil Procedure 12(b)(1)-(6) or, in the alternative, for summary judgment.

<u>DISCUSSION</u>

I. <u>BIVENS</u> CLAIMS

Cornish's amended complaint seeks unspecified <u>Bivens</u> damages against the defendants in their individual and official capacities. (Am. Compl. at 83-84, 90.) The defendants move to dismiss the individual capacity claims for, among other things, failure to effect proper service, improper venue, and lack of

personal jurisdiction.[2]  (Defs.' First Mem. at 12-16.)  See also Fed. R. Civ. P. 12(b)(2), (3), (5).  They also argue that Cornish's official capacity claims, construed as claims "against the government itself" (Defs.' First Mem. at 12 n.5), should be dismissed for failure to "identify a waiver of sovereign immunity for his monetary claims."  (Id. at 29.)

    A.   Individual capacity claims

    Cornish personally attempted to serve process upon defendant John Doll, the then-Director of the USPTO, and Harry Moatz, the then-Director of the USPTO's OED, by certified mailings to their offices of employment.  (See Defs.' First Mem. at 14; see also Return of Serv. Aff. [Dkt. #3].)  Doll's return receipt bears the signature "Lennox Cooper," and Moatz's is unsigned.  Cornish filed no proof of service upon defendant James Toupin, the then-General Counsel.

    The defendants have moved to dismiss the amended complaint for insufficiency of service of process.  See Fed. R. Civ. P. 12(b)(5).  "'Upon such a motion, the plaintiff [must] establish[] that []he has properly effected service' as is required under Rule 4."  Strong-Fischer v. Peters, 554 F. Supp. 2d 19, 23

---

[2]  Cornish's failure to establish personal jurisdiction over the individually-named defendants obviates any need to discuss additional grounds for dismissal of the individual capacity claims, such as special factors counseling against creation of a Bivens remedy (Defs.' First Mem. at 17-20) and failure to state a claim for which relief can be granted (id. at 20-26).

(D.D.C. 2008) (citation omitted). "[S]ervice[] . . . cannot be effected by a party" since "Rule 4(c)(2) provides that '[a]ny person who is at least 18 years old and not a party may serve a summons and complaint.'" Judd v. F.C.C., 276 F.R.D. 1, 6 (D.D.C. 2011) (citing Fed. R. Civ. P. 4(c)(2)) (emphasis added). Neither may an individual defendant be served "at his place of business." Young v. Fed. Bureau of Prisons, 825 F. Supp. 2d 234, 239 (D.D.C. 2011). Instead, "Rule 4(e)(2) requires that service upon defendants sued in their individual capacities be effected either personally, by leaving the complaint and summons at the dwelling or usual place of abode, or by delivery to an agent lawfully authorized to receive service." Williams v. Court Services and Offender Supervision Agency for D.C., 840 F. Supp. 2d 192, 199 n.3 (D.D.C. 2012) (citing Fed. R. Civ. P. 4(e)(2)).

Here, Cornish's service of process was insufficient. He personally tried to serve two of the three individually-named defendants, and did so by mailing process to them at their place of employment. Moatz's unsigned return receipt does not show that Moatz received process, and Cornish provides no evidence that anyone named Lennox Cooper was authorized to accept service of process as Doll's agent. Cornish supplies no proof at all of personal service upon Toupin. Although "pro se litigants are allowed more latitude than litigants represented by counsel to correct defects in service of process and pleadings," Nellis v.

Gonzales, Civil Action No. 06-1704 (CKK), 2007 WL 1033517, at *2 (D.D.C. Mar. 30, 2007); see also Freeman v. Fallin, 210 F.R.D. 255, 256 (D.D.C. 2002) (granting unrepresented plaintiffs "a brief extension of time to perfect service"), no such latitude is warranted here. The defendants alerted Cornish to a defect in service as early as 2009, but he has shown no subsequent effort to correct it.

Cornish's failure to properly effect personal service of process upon the defendants also deprives the court of personal jurisdiction over the defendants in their individual capacities. Johnson v. Williams, Civil Action No. 05-2315 (RBW), 2006 WL 2788985, at *3 (D.D.C. Sept. 26, 2006); see also Simpkins v. D.C., 108 F.3d 366, 369 (D.C. Cir. 1997). "In a Bivens action, the defendants must be personally served as individuals in order for a court to have jurisdiction over them. . . . The failure to effect individual service is fatal to a Bivens claim." Paolone v. Mueller, Civil Action No. 05-2300 (JDB), 2006 WL 2346448, at *3 (D.D.C. Aug. 11, 2006). Cornish bears "the burden of establishing the court's personal jurisdiction over" the defendants. Day v. Corner Bank (Overseas) Ltd., 789 F. Supp. 2d 150, 155 (D.D.C. 2011). Because "it is undisputed that [the] defendants . . . have not been properly served under Rule 4(e),"

Paolone, 2006 WL 2346448, at *3, the individual capacity claims will be dismissed.[3]

B.  Official capacity claims

"It is well established that Bivens remedies do not exist against officials sued in their official capacities."  Kim v. United States, 632 F.3d 713, 715 (D.C. Cir. 2011).  Claims brought against federal officials in their official capacities "are treated as if they were brought against the federal government itself."  Morton v. Bolyard, 810 F. Supp. 2d 112, 115 (D.D.C. 2011) (citing Kentucky v. Graham, 473 U.S. 159, 165-66 (1985)).  However, "'it is axiomatic that the United States may not be sued without its consent[,] that the existence of consent is a prerequisite for jurisdiction,'" Morton, 810 F. Supp. 2d at 115 (quoting United States v. Mitchell, 463 U.S. 206, 212 (1983)), and that, "'[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.'"  Id. at 116 (quoting FDIC v. Meyer, 510 U.S. 471, 475 (1994)).  Since the federal government "has not expressly waived its sovereign immunity for suits brought under Bivens[,]" sovereign immunity

---

[3]  Cornish "has not contested, and therefore has conceded, defendants' argument that this venue is improper for litigating [his] Bivens claim[s,]" which should be "brought in the judicial district where a substantial part of the events or omissions giving rise to the claim occurred[.]"  Mullen v. Bureau of Prisons, 843 F. Supp. 2d 112, 116-17 (D.D.C. 2012).  The Bivens claims therefore are subject to dismissal for improper venue as well.  See id. (granting motion to dismiss Bivens claim).

bars Cornish's claims against the individually-named defendants in their official capacities. <u>Young</u>, 825 F. Supp. 2d at 239 (citing <u>Meyer</u>, 510 U.S. at 484, and <u>Perkins v. Ashcroft</u>, 275 F. App'x 17 (D.C. Cir. 2008)). Thus, the court lacks subject matter jurisdiction to hear Cornish's official capacity claims.

II. <u>TAFAS</u> CLAIMS

As he did in <u>Cornish I</u>, Cornish challenges as unconstitutional the USPTO's August 2007 "Final Rules" and seeks a declaratory judgment to that effect. (Am. Compl. at 75.) In <u>Tafas v. Dudas</u>, 541 F. Supp. 2d 805 (E.D. Va. 2008), "the plaintiffs challenged the [validity of the] Final Rules." <u>Cornish I</u>, 715 F. Supp. 2d at 66. "During the course of the <u>Tafas</u> litigation, however, the USPTO rescinded the Final Rules and the litigation was dismissed as moot." <u>Id.</u> (citing <u>Tafas v. Kappos</u>, 586 F.3d 1369, 1371 (Fed. Cir. 2009). Here, Cornish's amended complaint refers repeatedly to the <u>Tafas</u> litigation and the "Final Rules published in 72 Fed. Reg. 46,716 (Aug. 21, 2007)." (<u>See, e.g.</u>, Am. Compl. at 63-64, 113-15; <u>see also</u> <u>id.</u> at 169-76, 182, 184.) However, the defendants assert that these "repeated references . . . make no sense," because "[n]either the Final Rules nor the <u>Tafas</u> litigation have anything to do with a practitioner seeking reinstatement to the PTO roster of registered practitioners." (Defs.' Second Mem. at 8.) Assuming that the Final Rules are linked to Cornish's attempted

reinstatement, the defendants argue that his claims should be dismissed as moot.  (Id. at 9.)

"It is a basic constitutional requirement that a dispute before a federal court be 'an actual controversy . . . extant at all stages of review, [and] not merely at the time the complaint is filed.'"  Newdow v. Roberts, 603 F.3d 1002, 1008 (D.C. Cir. 2010) (quoting Steffel v. Thompson, 415 U.S. 452, 459 n.10 (1974)) (alteration in original).  "'Even where litigation poses a live controversy when filed,' a federal court must 'refrain from deciding it if events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.'" Initiative & Referendum Inst. v. U.S. Postal Svce., No. 10-5337, 2012 WL 2866306, at *7 (D.C. Cir. July 13, 2012) (quoting Am. Bar Ass'n v. FTC, 636 F.3d 641, 645 (D.C. Cir. 2011)).  Under the mootness doctrine, a case is deemed moot if "'the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'"  Honeywell Int'l, Inc. v. Nuclear Regulatory Comm'n, 628 F.3d 568, 576 (D.C. Cir. 2010) (quoting Cnty. of L.A. v. Davis, 440 U.S. 625, 631 (1979)). Thus, "where 'events outrun the controversy such that the court can grant no meaningful relief,'" Whitney v. Obama, 845 F. Supp. 2d 136, 138 (D.D.C. 2012) (quoting Del Monte Fresh Produce Co. v. United States, 570 F.3d 316, 326 (D.C. Cir. 2009) (Sentelle, J.,

dissenting) (internal quotation marks and citation omitted)), a case must be dismissed as moot.

Cornish has made no showing of a live controversy involving the Final Rules since the USPTO has rescinded them. (See Defs.' Second Mem. [Dkt. #23] at 8, 10.) Even assuming that the OED's denial of Cornish's request for reinstatement in any way materially depended upon the Final Rules, Cornish cannot show that he will be subject to future adverse actions driven by rules which have been rescinded. Declaratory relief from rescinded rules would be unavailable. Cornish's Tafas claims therefore will be dismissed as moot.

III. COMMON LAW AND CONSTITUTIONAL CLAIMS

Cornish appears to assert common law claims against the defendants for interference with contract rights, deceit, and fraud, based upon the March 31, 2009 Order and other actions of the USPTO and its employees involving his failed efforts to be reinstated on the patent attorney register. (See Am. Compl. ¶¶ 26-27, 108, 126, 139.) Under 28 U.S.C. § 2679(d), the defendants filed a certification "substituting the United States as the sole defendant in place of the individual defendants for any such common law claims." (Defs.' Second Mem. [Dkt. #23] at 10-11, Attached Certification.) Cornish's amended complaint also reiterates many of the same constitutional claims alleged in Cornish I, since he challenges the March 31, 2009 Order and

actions of the USPTO as unconstitutional limitations on his First Amendment right to freedom of speech. (See, e.g., Am. Compl. at 69.)

As is discussed above, "[t]he United States maintains sovereign immunity except to the extent that it consents to be sued, and the terms of its consent define a court's jurisdiction to hear the suit." Hornbeck Offshore Transp., LLC v. United States, 563 F. Supp. 2d 205, 209 (D.D.C. 2008). "[S]uits for damages against the United States under . . . the Constitution are barred by sovereign immunity and . . . suits for damages against the United States under the common law must be brought pursuant to the limited waiver of sovereign immunity in the [Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b).]" Benoit v. United States Dep't of Agriculture, 608 F.3d 17, 20 (D.C. Cir. 2010). FTCA claims are subject to dismissal, however, where the plaintiff does not "assert that he has exhausted necessary administrative remedies under the FTCA, which is a mandatory prerequisite . . . . ," and where a plaintiff seeks "a remedy for Constitutional violations." McAlister v. Potter, 843 F. Supp. 2d 117, 123 (D.D.C. 2012) (quotation marks and citation omitted).

If, as the defendants suggest, Cornish's amended complaint "add[s] a First Amendment claim that the PTO, by excluding him from the patent bar, would make unlawful his advertising himself as a member of the patent bar (Defs.' Second Mem. [Dkt. #23] at 4

n.5), then sovereign immunity bars that claim.  See Benoit, 608 F.3d at 20-21.  Any damages claims asserted against the USPTO and the United States for alleged violations of the Fourth, Fifth, and Fourteenth Amendments (see, e.g., Am. Compl. at 129-131) likewise are barred by sovereign immunity.  See Benoit, 608 F.3d at 20-21.  In addition, the FTCA does not waive sovereign immunity for claims of interference with contract rights.  28 U.S.C. § 2680(h).  The D.C. Circuit has held that "'[c]laims for interference with prospective business advantage . . . may be barred as claims arising out of interference with contract rights[.]'"  Peter B. v. U.S., 579 F. Supp. 2d 78, 83 (D.D.C. 2008) (quoting Art Metal-U.S.A., Inc. v. United States, 753 F.2d 1151, 1155 (D.C. Cir. 1985)).  Finally, since Cornish has not pled or asserted exhaustion of remedies as to his fraud or deceit claims, neither of those claims falls under the limited waiver contemplated by the FTCA.  Cornish's common law and constitutional claims against the government therefore will be dismissed for lack of subject matter jurisdiction.

IV.  REINSTATEMENT CLAIM

Throughout the Amended Complaint, Cornish asserts many of the same claims he litigated in Cornish I.  Cornish also incorporates by reference all of the causes of action and

allegations set forth in that previous case.  (See, e.g., Am. Compl. ¶¶ 106-07.)[4]

"[T]he doctrine of *res judicata* holds that a judgment on the merits in a prior suit bars a second suit involving identical parties or their privies based on the same cause of action." Apotex, Inc. v. U.S. FDA, 393 F.3d 210, 217 (D.C. Cir. 2004) (citing Drake v. FAA, 291 F.3d 59, 66 (D.C. Cir. 2002)).  This doctrine "plays a central role in advancing the 'purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdictions.'"  Apotex, 393 F.3d at 217 (quoting Montana v. United States, 440 U.S. 147, 153 (1979)).  *Res judicata* "protects [parties'] adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." Montana, 440 U.S. at 153-54.  The doctrine need not be argued by the parties, as a court "may raise the *res judicata* preclusion defense sua sponte," Rosendahl v. Nixon, 360 F. App'x 167, 168 (D.C. Cir. 2010) (citing Arizona v. California, 530 U.S. 392,

---

[4]  The defendants argued that these claims should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, as Cornish "is not entitled to seek duplicative recovery for the same alleged injuries."  (Defs.' First Mem. [Dkt. #11] at 29.)  However, both the defendants' motion to dismiss the complaint and motion to dismiss the amended complaint were filed before the decision in Cornish I was issued. Therefore, the defendants could not argue at the time of filing for dismissal based on *res judicata*.

412-13 (2000)); see also Brown v. D.C., 514 F.3d 1279, 1285-86 (D.C. Cir. 2008)). "A 'district court may apply res judicata upon taking judicial notice of [a] [party's] previous case.'" Hiligh v. Quintana, Civil Action No. 12-497 (RWR), 2012 WL 1635242, at *1 (D.D.C. May 8, 2012) (quoting Tinsley v. Equifax Credit Info. Svces., Inc., No. 99-7031, 1999 WL 506720 (D.C. Cir. June 2, 1999) (per curiam)) (alteration in original). In considering the scope of a "cause of action," the D.C. Circuit "has adopted the Second Restatement's 'transactional' approach[.]" Stanton v. D.C. Court of Appeals, 127 F.3d 72, 78 (D.C. Cir. 1997); see also Restatement (Second) of Judgments § 24(1) (1982). "A 'cause of action, for purposes of [res judicata], comprises all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.'" Mwabira-Simera v. Sodexho Marriott Mgmt. Svces., 786 F. Supp. 2d 395, 397 (D.D.C. 2011) (quoting Stanton, 127 F.3d at 78 (internal quotation marks and citation omitted)). In determining "[w]hat factual groupings constitute[] a transaction, and what groupings constitute a series[,]" courts consider "whether the facts [a]re related in time, space, origin, or motivation, whether they formed a convenient trial unit, and whether their treatment as a unit conforms to the parties'

expectation, business understanding or usage." Restatement (Second) of Judgments § 24(2).

An argument to dismiss a claim on grounds of res judicata is analyzed under Federal Rule of Civil Procedure 12(b)(6) regarding failure to state a claim upon which relief can be granted. <u>Po Kee Wong v. U.S. Solicitor Gen.</u>, 839 F. Supp. 2d 130, 136 (D.D.C. 2012). In considering a Rule 12(b)(6) argument, a court accepts as true a complaint's factual allegations, <u>Sierra Club v. Jackson</u>, 648 F.3d 848, 855 (D.C. Cir. 2011), "giving [the plaintiff] the benefit of every reasonable inference drawn from the well-pleaded facts[,]" <u>Long v. Safeway, Inc.</u>, Civil Action No. 11-0768 (BJR), 2012 WL 344756, at *2 (D.D.C. Feb. 3, 2012). However, "[i]f a plaintiff fails to allege sufficient facts to support his claim and nudge it across the line from conceivable to plausible, the complaint will be dismissed." <u>Cornish I</u>, 715 F. Supp. 2d at 61 (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 556 (2007)).

Here, the OED's March 31, 2009 opinion and its initial denial of Cornish's request for reinstatement form part of the same series of events within the meaning of <u>Stanton</u>. <u>See Stanton</u>, 127 F.3d at 78. The decisions issued from the same agency against the same petitioner, and rejected the same request for reinstatement. Because Cornish's reinstatement claim against the USPTO already has been dismissed on the merits, <u>see Cornish</u>

I, 715 F. Supp. 2d at 62-64, and because the facts underlying that claim are part of the same series of events as those underlying the instant reinstatement claim, the instant reinstatement claim is barred under *res judicata* and will be dismissed.

## CONCLUSION

The court lacks personal jurisdiction over the individual defendants because none was properly served. Cornish's <u>Tafas</u> claim is moot. His official capacity <u>Bivens</u> claims and common law and constitutional claims against the government are barred by sovereign immunity. *Res judicata* bars his claim for reinstatement. Accordingly, the defendants' motion to dismiss will be granted. A final order accompanies this memorandum opinion.

SIGNED this 15th day of August, 2012.

/s/
RICHARD W. ROBERTS
United States District Judge
